JOHN H. WREDE, Appellee, v. AUGUST GROTHE et al., Appellants.

HIGHWAYS: Establishment—Private Ways of Necessity—Rights
1 Acquired—Fences. He who condemns a private way through the lands of another in order to secure access to a public high-

way, acquires no *fee* to the land so condemned, and therefore takes no title to a fence then existing along one side of said condemned way. The condemnor must build and maintain the fences on both sides of such way. It follows that the landowner from whose lands the said way is carved may remove existing fences. (Sec. 2028, Code Supp., 1913.)

HIGHWAYS: Construction—Preparing for Travel—Destruction of
2 Growing Things. While things existing upon and in land condemned for a highway belong to the landowner from whom the way is taken, in so far as they are not necessary for road purposes, yet he who condemns a private way of necessity may, equally with the road supervisor, put the condemned way in condition for travel, and for such purpose, if necessary, may burn or wholly remove from the said way the grass, brush, or wood existing thereon.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

MARCH 12, 1918.

ACTION at law by which plaintiff sought to recover for the wrongful removal of a line fence by the defendants. Defendants counterclaimed for alleged wrongful acts committed by the plaintiff in the removal and conversion of cross-fences, cutting and removal of hay and grain growing on the established public way, digging and removal of dirt on said way, and the burning of defendant's wood thereon. Each asked for exemplary damages, in addition to actual damages. There was a verdict and judgment for plaintiff for $140, and defendants appeal.—*Reversed.*

*Hart & Hart,* for appellants.

*Edwin B. Wilson,* for appellee.

PRESTON, C. J.—1. Plaintiff sought to recover damages for the alleged wrongful taking by appellants of 40 rods of fence. Plaintiff owns the west half of the southwest quarter of the southeast quarter of the section, and defendants own the north half of the south-

1. HIGHWAYS:
establishment:
private ways
of necessity:
rights ac-
quired: fences.

east quarter. Defendants' tract is between plaintiff's land and the public highway on the north of defendants' land. Plaintiff had no way to that or any other public highway from his land. He petitioned for a public way one rod in width across the land of defendants at the west end of the 80. Defendants in this action, who were plaintiffs in an injunction suit, sought to restrain the establishment of such a road, on the ground that the road as petitioned for, 16½ feet wide, was too narrow to accomplish the purposes desired. The plaintiff here and the sheriff, who were defendants in the injunction suit, moved to dissolve the injunction, and a hearing was had thereon, May 14, 1915, at which time a stipulation was entered into and signed by the parties, as follows:

"In the above cause, it is agreed between plaintiffs and defendant, John H. Wrede, in full settlement of all questions relative to said cause, that the application for appraisal be amended to read '33 feet off of the west end of plaintiffs' premises,' and the said plaintiffs hereby waive appraisal by sheriff's jury; and by agreement, the price affixed for said premises, as by law provided, is $200, which amount the defendant, John H. Wrede, agrees to pay, and in addition, to furnish a gate, the same as at the entrance from the road to plaintiff's premises, and set same on the east side of said road at the middle point of the 80 rods, unless otherwise designated by plaintiffs, for the use of plaintiffs and the public; but thereafter, plaintiffs to maintain and keep said gate in repair. Defendant Wrede agrees to deposit said $200 with the county auditor, to be paid to plaintiffs upon the completed record for said road being filed by the sheriff in the county auditor's office. Plaintiffs to pay the costs of this action, and defendant, Wrede, to pay the costs in the application for the establishment of said road. All other matters relative to the establishment of said road to be as by law provided."

The plaintiff in this case deposited the money, as agreed, and the road was established. Defendants received the $200 agreed upon as compensation for the road. Prior to such establishment, there was a partition fence along the west end of defendants' land, between defendants' land and the land of one Krall, to the west. The north half of this fence was the portion belonging to Krall, and the south half had been built and kept in repair by the defendants. This was the fence on the west line of the new road. After the establishment of the new road, plaintiff, with the consent of defendants, laid off the road and began building the 80 rods of fence along the east line thereof, when defendants, over plaintiff's protest, tore down and removed the south 40 rods of what had formerly been the partition fence between defendants and the Krall land, to the west. Defendants attempted to remove this fence, and claimed the right to do so. The plaintiff opened the new road, after it had been established, and defendants allege in their counterclaim that, at that time, plaintiff burned wood situated upon the new road, of the value of $1.00; that plaintiff cut grass on said new road and converted it to his own use, which was of the value of $12; that plaintiff tore down cross-fences that crossed the new way and converted it to his own use, to the value of $8.00; that the plaintiff removed soil from said new way to his own premises, and converted said soil to his own use, to defendants' damage in the sum of $20; to defendants' damage in the sum of $41 for all these items. Defendants asked exemplary damages in the sum of $500, in addition to such actual damages.

It is conceded that there is practically no dispute as to the facts in the line fence matter. It is admitted that defendants took that part of the fence between their land and that of Krall, which had been built by them. Appellant says in argument that one of the main questions in the case, the decision of which will tend to settle a great part

of the controversy, is as to who had the right to the possession and use of the south half of the line fence between the land of defendants and Krall, after the establishment of the highway,—whether defendants or plaintiff. And plaintiff states the proposition that, though a number of errors are assigned, the really decisive question as to plaintiff's claim is whether defendants had the right to remove this fence; and that, if they had such right, plaintiff has no cause of action against them therefor.

Defendants offered a number of instructions, to the effect that, by the law under which the public way in question was established, plaintiff has the duty of erecting and maintaining fences on both sides of said public way; that the establishment of such way does not divest the title to the land from the original owner; and that all grain, hay, wood, and timber thereon remained in the original owner of the land comprised within the said way, subject only to the right of the public to the use of the way; that, subject to the privilege in the public at large to use said way, and subject to the right of the public officers to use such of the soil, wood, trees, etc., as may be necessary for the purpose of repairing, keeping up, and working the said public way, all right to the property thereon remains in the original owner, and that the items set up by the defendants in their counterclaim are the property of defendants; that, by the payment of the $200 by plaintiff for said right of way, he obtained no interest in the items set up in the counterclaim; that the only right acquired by the plaintiff was the use of the way as the general public; that defendants, as the original owners of the land comprised within the established way, are the owners of and are entitled to take away all fences erected by them previous to the establishment of the road, and along and across the land now comprised within said public way; and that they were not trespassers in removing the same.

The court instructed the jury that plaintiff claimed $40 as the reasonable value of the fence removed by defendants, and claimed exemplary damages in addition, and said further:

"In this case there is no controversy but what there was a public way established across one end of an 80-acre tract belonging to the defendants in this case, upon the petition of the plaintiff herein, and that plaintiff paid for said public way the sum of $200, which was received by the defendants. So then, so far as the plaintiff is concerned in this action, his claim for damages is based solely upon the claim that the defendants wilfully and maliciously, and without the consent of the plaintiff, tore down and removed entirely the south half of the fence along the west side of said roadway, being a part of the division fence between the property of the defendants and one Krall. The defendants do not deny that they removed the said fence. Now, you are instructed that the defendants in this action had no right under the law to remove this fence, and that plaintiff is therefore entitled to recover the reasonable value of that portion of said partition fence removed by the defendants, such value to be determined from the testimony in this case. And if you further find that the action of the defendants in removing said fence was malicious, then you are authorized, if you so desire, to allow exemplary, or punitive, damages."

By this instruction the court held, as a matter of law, that the fence went with the land taken.

Section 2028, Code Supplement, 1913, provides:

"Any person, corporation or copartnership owning or leasing any land not having a public or private way thereto, may have a public way to any railway station, street or highway established over the land of another, not exceeding forty feet in width, to be located on a division, subdivision or 'forty' line or immediately adjacent thereto;

but if a railway is to be constructed thereon, as provided
in section two thousand and thirty-one, the same may be
located wherever necessary and practicable, but not exceed-
ing one hundred feet in width, and not interfering with
buildings, orchards, gardens or cemeteries; and when the
same shall be constructed it shall, when passing through
inclosed land, be fenced on both sides by the person or
corporation causing it to be established."

Appellee contends that the provisions of Title X, Chap-
ter 4, are made applicable to such a way or road, by Code
Section 2030. But appellants' contention is, at this point,
that the section last referred to has no reference to the
fence matter now in dispute. It is appellants' contention
that plaintiff did not take the fee to the new road, but that
only a public way was established, and that plaintiff must
pay the damages for the taking of the right of way, and is
required to fence the new public way on both sides; and
therefore the fence in question did not pass with the land,
but belonged to the defendants, and that plaintiff had no
right to use it. It is true, of course, as contended by ap-
pellants, that plaintiff was required to fence the new road,
and plaintiff concedes that he would be compelled to main-
tain the fences. If there were no fences on either side,
then, clearly, he would be required to build the two fences.
But the fence in question was already there, on one side of
the road as established, and the question is whether plain-
tiff, having established and paid for the road, is entitled to
use the fence that was already there.

It is contended further by appellants that a right of
way means a mere easement, and that, when land is taken
for such purpose, the right to the things growing or being
thereon remains in the owner of the fee, subject only to
the right of the public to pass over the land, and also to the
right of public officials to make use of anything growing or
being on the land, to make the way fit for travel (citing

cases). Plaintiff was not a road supervisor or an officer; but the record shows, and the jury could have so found, that plaintiff, with the consent of the defendants, laid out the road and did the work, so that, under such circumstances, in that respect he would doubtless stand in the same position as a road supervisor. Counsel for appellants concede that, if the public officials had found it necessary to use this fence to make the way suitable for travel, they might have taken it and used it for that purpose; but not otherwise. They concede, too, that the method of taking this strip of land for the road was by condemnation proceedings, and that it was taken under the provisions of Section 2029 of the Code, and that the way taken was a public way.

It is thought by appellants that the court, in its instructions, told the jury, in effect, that it was defendants' duty to fence one side of the road; but this is not quite accurate. The question is, rather, whether plaintiff had the right to the fence or to use it. On the other hand, it is contended by appellee, as already stated, that, by Code Section 2030, the provisions of Title X, Chapter 4, are made applicable to such a way or road as is provided for in Section 2028 of the Supplement to the Code, 1913. They say, too, that a railway company acquiring land by condemnation is required, under Section 2057 of the Code, to fence land on both sides, the same as under Section 2028 of the Supplement. And they contend, also, that, where land is thus condemned, the amount of damages should be the full value of the land, as the bare fee remaining is of no determinable value (citing *Clayton v. Chicago, I. & D. R. Co.*, 67 Iowa 238). They rely on Section 1995 of the Code, which is in Title 10, Chapter 4, which provides, substantially, that the railway may, in addition to the real estate for its right of way, "also take, remove and use for the construction and repair of said railway and its appurtenances, any earth,

gravel, stone, timber or other materials on or from the land so taken." Their contention is that the words "other materials" in this statute would include fences already built and in use when the land is taken; that appurtenances are things belonging to another thing as principal, and which pass as incident to the principal thing (citing cases); that the word "appurtenances," as used in Section 1995, does not refer to the land taken for the right of way, but relates to the railway itself; that the word "its" shows that the legislature intended it to mean appurtenances of the railway acquiring the right of way: that is, that the fence in question would not be claimed by the railway as being an appurtenance of the land itself, but an appurtenance of the railway. And they say that, if the land was conveyed by ordinary deed, the fence thereon would pass with the conveyance and the fee, and that, under Title X, Chapter 4, the interest or title provided by the statute would pass to the condemnor. The trial court so held, and I am inclined to that view, to the extent, at least, that plaintiffs would be entitled to use the fence already there. It is doubtless true that the fee to the land did not pass to plaintiffs. But that is the practical effect of the proceedings: nothing remained in defendants but the naked fee, subject to the use by the public.

Appellee contends that, under Section 2030, the applicant acquiring a way to lands under Section 2028 of the Supplement is in the same position as a railway procuring its right of way, except that the section confers no title upon the applicant; that the fence in question was upon the land taken, and belonged to the defendants, with its material thereon, and could be used for the construction of appurtenances to the road; that defendants had been paid their damages in full for all that had been taken away from them, and this, by the stipulation, was by their consent.

There is no provision in Section 2028 that the person

establishing the road shall pay for an existing fence along
the line of the proposed road, in addition to the assessed
damages.   It seems to me that the intent of the legislature
was that the party procuring the road should construct a
fence where there was none, and should maintain fences
on both sides.   Under the stipulation by which the dam-
ages were fixed, defendants did not expressly reserve the
fence.   Had there been no fence on either side of the road,
and plaintiff had erected a new fence on both sides, defend-
ants would have no right to destroy or remove it.

The majority are of opinion, however, that, because
the fee did not pass by the condemnation proceedings, the
fence in question did not pass to plaintiff; and therefore
plaintiff had no interest therein, and could not recover for
its removal by defendants.   For the error of the court in
instructing to the contrary, the cause is reversed.   This
disposes of the principal controversy in the case.

2.  As to the counterclaim, complaint is
2. HIGHWAYS : construction : preparing for travel : destruction of growing things.
made that the trial court refused instruc-
tions requested by the defendants.   The
propositions covered thereby are that plain-
tiff had no right to remove the soil, burn
the wood, etc., because the things represented by these items
in the counterclaim were the property of defendants; and
that plaintiff would have no right to remove them and con-
vert them to his own use.   They concede, however, that
a road supervisor might be permitted to take down the
cross-fences, dig the soil, etc., to open the road, and fur-
ther, that only a road supervisor could open the road and
make it fit for travel.   We have already referred to this
matter, that the plaintiff was opening the road with the
consent of defendants.

On the disputed question of fact as to whether plain-
tiff did convert some of this property, as alleged, to his own
use, or whether he simply removed it to open the road, the

court submitted the question to the jury. On this branch of the case, the trial court instructed the jury that the burden of proof was on the defendant as to the counterclaim, and said further, substantially:

"You are instructed that the plaintiff herein had no right to convert to his own use any of the cross-fences, and if he did so, he is liable to the defendants for the reasonable value of the same, as shown by the testimony. You are instructed, however, that he would have the right to remove the same from said highway, in order that he might use such highway or put it in condition for use. You are further instructed that plaintiff would have no right to convert to his own use or burn any wood which might be on said highway belonging to the defendants, and if he did so, he would be liable to the defendants for the reasonable value thereof; but you are instructed that he would have the right to clean up said highway, in order that he might use the same, and if, in doing so, it became necessary to burn brush that was on the highway, he might do so. You are instructed that the plaintiff could have no right to remove any of the soil from said highway and convert the same to his own use, and that, if he did so, he would be liable to the defendants for the reasonable value thereof; but you are instructed that he would have the right to put said highway in condition for travel, and if, in doing so, it became necessary to haul away some of the dirt therefrom, that he would have the right to do so, and might haul it to his own ground, if there was no suitable place upon said highway to use the same, and in that event he would not be liable for so doing. You are instructed that the plaintiff would have no right to cut and haul from said road any grass or hay that might be thereon, and if he did so, he would be liable to the defendants for the reasonable value thereof; but you are instructed that he would have the right to clean up said roadway for use, and that, if what he

did was done only for that purpose, then he would not be liable."

Without approving the instruction as to some of its features, we think it is as favorable to the defendants as they could ask.

Appellants complain that the court used the word "brush" at one point in the instruction, and that this discredited defendants' claim as to the item claimed for wood. Only one dollar was claimed for burning wood; and there is evidence that there was some brush attached to the body of a tree, and that plaintiff burned this with weeds, grass, and brush which was mixed up with the tree, and that he mowed the road and cleaned it up and hauled the grass to his home and threw it on his manure pile.

3. The record shows that, during the cross-examination of a witness in regard to the amount of dirt claimed to have been hauled away by plaintiff, this question was asked: "Q. Do you know how much he hauled away?" An objection was sustained. Thereupon, counsel for defendants said: "I will try again; maybe my luck will turn." Thereupon, the court said:

"I do not care to have any remarks of that kind addressed to the court. If I am wrong, I am perfectly willing to admit it. Nothing was asked this man about the amount of dirt that was hauled away by Mr. Wrede. It shows you weren't paying any attention to the direct examination, or you wouldn't attempt to conduct such a cross-examination, and take the time of the court and jury in doing it. The objections were sustained, and they are perfectly good."

Complaint is made of this language by the court, and defendants think the remark was prejudicial, because the statement was made in the presence of the jury that counsel was taking the time of the court and jury. There was some provocation. Counsel, during the stress of the trial,

were perhaps not as courteous to the court as they should have been.

Other questions are argued, but those we have noticed are the more important. We have examined the record, and conclude that, for the error stated, the judgment ought to be, and it is,—*Reversed.*

LADD, GAYNOR, and STEVENS, JJ., concur.